IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**3A COMPOSITES USA, INC.,**
**a Missouri Corporation**                                                               **PLAINTIFF**

**V.**                                    **CASE NO. 5:16-CV-5017**

**UNITED INDUSTRIES, INC.,**
**an Arkansas Corporation; and**
**WESLEY PAULIN**                                                                       **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Defendants United Industries, Inc.'s ("United") and Wesley Paulin's Motion for Partial Summary Judgment (Doc. 34), Brief in Support (Doc. 35), and Statement of Material Facts Not In Dispute (Doc. 36); Plaintiff 3A Composites USA, Inc.'s ("3A") Brief in Opposition (Doc. 46) and Statement of Disputed Material Facts (Doc. 47); and the Defendants' Reply (Doc. 51). For the reasons given below, the Defendants' Motion is **GRANTED**.

### I. BACKGROUND

This is the second lawsuit in this Court between these parties. As this Court recounted in the previous lawsuit:

> 3A[1] and United are competing manufacturers of graphic arts polystyrene display board ("Board"). 3A is headquartered in Statesville, North Carolina, and employs roughly 2,700 people. United is headquartered in Bentonville, Arkansas, and employs roughly 100 people.
>
> One of the raw components of Board is something called "thick foam." Until nearly 2007, both 3A and United purchased thick foam from outside

---

[1] 3A has conducted business under a variety of different names over the years, as the result of reorganizations and mergers. For the sake of simplicity, 3A and all of its predecessor entities are referred to as "3A" throughout this Opinion.

1

suppliers. However, at some point around a decade and a half ago, 3A began exploring the feasibility of producing thick foam in-house.

In 2005, 3A formally launched a project to develop its own thick foam production line. 3A retained an outside consultant named Ed LeDuc to help with the project. The parties disagree somewhat on the scope of Mr. LeDuc's oversight, but there is no doubt that he played a critical role in the line's development and had a significant amount of responsibility. The project development team also had members who were 3A employees—one of whom was Mr. Paulin: 3A's Product Development Manager. Mr. Paulin was the "startup manager" of this particular project.

In December 2006, 3A successfully produced its desired quality of thick foam and began selling thick foam to United. From then until 2013, 3A was United's primary supplier of thick foam. During this period, Mr. LeDuc continued providing *ad hoc* assistance to 3A with refinement or trouble-shooting of its thick foam line. Mr. Paulin remained employed at 3A until his resignation in December 2008.

In 2011, United began exploring the possibility of developing its own thick foam line. United's President, John Ferm, met with Mr. LeDuc several times that year and ultimately decided to retain Mr. LeDuc as a consultant for that project. Mr. LeDuc played essentially the same role in the development of United's thick foam line as he had played in the development of 3A's thick foam line, and the two foam lines were essentially identical, albeit with minor differences. In June 2012, after learning that United was developing a thick foam line, 3A issued notice to United that it was cancelling their thick foam supply agreement. In late 2012, United hired Mr. Paulin on Mr. LeDuc's recommendation for the position of extrusion manager. Upon his hiring, Mr. Paulin began assisting Mr. LeDuc in the development of United's thick foam line.

On February 1, 2013, United received a cease-and-desist letter from 3A, in which 3A informed United that Mr. Paulin owed a duty of confidentiality to 3A pursuant to a contract he had signed while employed there ("Confidentiality Agreement"). This was the first time that United learned of the existence of Mr. Paulin's Confidentiality Agreement. 3A also asserted that Mr. LeDuc owed 3A a duty of confidentiality. 3A contended that the technology and processes associated with its thick foam line were trade secrets, and demanded that United, Mr. LeDuc, and Mr. Paulin cease their efforts at copying its thick foam line. United countered that the information at issue was neither confidential nor a trade secret, that no one was violating any legal duties, and that it would not stop developing its own thick foam line. Mr. Paulin remains employed in the same role at United today.

*3A Composites USA, Inc. v. United Indus., Inc.* ("*3A Composites I*"), 2015 WL 5437119, at *1–*2 (W.D. Ark. Sep. 15, 2015).

3A filed the first lawsuit against United and Mr. Paulin on May 31, 2013, in the United States District Court for the Western District of North Carolina. *Id.* at *2. In that lawsuit, 3A brought claims for breach of contract against Mr. Paulin, tortious interference with contract against United, misappropriation of trade secrets against both Defendants, and deceptive trade practices against both Defendants. *Id.* Venue was transferred to this Court on May 15, 2014. *Id.*

On September 15, 2015, this Court entered an Order in *3A Composites I*, granting the Defendants summary judgment on 3A's claims for tortious business interference and deceptive trade practices, but permitting 3A's contract and trade secrets claims to proceed to trial. *See id.* at *8. Then on November 12 of that year—four days before trial was set to begin—3A moved to dismiss its remaining claims without prejudice. *3A Composites I*, Case No. 5:14-cv-5147, Doc. 136. The reason 3A gave for filing that motion at such a late date was that 3A's executives had only recently learned of new allegedly actionable activities by the Defendants. *See id.* at Doc. 132, ¶ 2. 3A maintained that its executives were prevented from learning this information earlier, because the Defendants had produced it in discovery subject to an "Attorneys' Eyes Only" designation. *See id.* at Doc. 133, p. 1. The Court granted 3A's motion pursuant to the Defendants' stipulation, with certain conditions. *See id.* at Doc. 136. The general thrust of the conditions was that the new case must be filed in this Court, and that while there would necessarily be a great deal of overlap in the two cases' claims, great care should be taken to avoid duplicative discovery and motion practice. *See id.*

3A opened this new case by filing its Complaint (Doc. 1) on January 27, 2016. 3A's new Complaint reasserted its old claims for breach of contract, tortious interference with contract, and misappropriation of trade secrets, but in addition to 3A's old factual predicate regarding thick foam, it contained additional allegations regarding a 3A product called "Gatorfoam," which 3A contends is "the industry's leading heavy-duty foam board," and is "comprised of Graphic Arts Thick Foam bonded between two resin-impregnated paper facers." *See* Doc. 1, ¶ 25. As with its older allegations regarding thick foam, 3A alleges that United induced Mr. Paulin to divulge confidential and proprietary information about how to manufacture Gatorfoam. *See id.* at ¶¶ 25–32, 41, 53–57, 60, 65.

United and Mr. Paulin have moved for summary judgment on all of 3A's claims to the extent that those claims are premised on its new allegations regarding Gatorfoam. (Doc. 34). Additionally, the Defendants have moved for summary judgment on 3A's claims to whatever extent they are premised on two other products that were not the subject of the original suit: tile backer board and foamed high impact polystyrene ("foamed HIPS"). *Id.* 3A does not oppose an award of summary judgment as to the latter two products, *see* Doc. 46-1, p. 30 n.137, so the Defendants will be awarded summary judgment at least to that extent. But 3A opposes summary judgment with respect to Gatorfoam. Accordingly, the Court will analyze whether summary judgment is appropriate on the Gatorfoam claims, after reciting the appropriate legal standard below.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the facts in the light most favorable

to the non-moving party, and give the non-moving party the benefit of any logical inferences that can be drawn from the facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212-13 (8th Cir. 1997). The moving party bears the burden of proving the absence of any material factual disputes. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999).

If the moving party meets this burden, then the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(c)). These facts must be "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The nonmoving party must do more than rely on allegations or denials in the pleadings, and the court should grant summary judgment if any essential element of the prima facie case is not supported by specific facts sufficient to raise a genuine issue for trial." *Register v. Honeywell Fed. Mfg. & Techs., LLC*, 397 F.3d 1130, 1136 (8th Cir. 2005) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 324 (1986)).

### III. DISCUSSION

The Defendants argue that they are entitled to summary judgment on all of 3A's Gatorfoam claims because there is no evidence that Mr. Paulin ever divulged any confidential or trade-secret information to United about manufacturing Gatorfoam. 3A concedes that its Gatorfoam claims are "based largely on circumstantial evidence," (Doc. 46-1, p. 19), but points out that Arkansas law permits a plaintiff to "maintain an action for theft of trade secrets based entirely on circumstantial evidence" because "[d]irect

evidence of theft of trade secret is rarely available," *Sw. Energy Co. v. Eickenhorst*, 955 F. Supp. 1078, 1085 (W.D. Ark. 1997). 3A contends that United wrongfully acquired from Mr. Paulin the process for manufacturing Gatorfoam facers—particularly, information about the step in this process that smooths out the previously lumpy texture of the facers.[2]

3A has pointed to solid evidence from which a jury could reasonably conclude that United wanted to learn how to manufacture Gatorfoam, that Mr. Paulin possessed this information, and that United had the means to acquire this information from Mr. Paulin once it hired him. However, there is no need to elaborate here on the nature and depth of that evidence, because what 3A has *not* pointed to is any proof—direct or circumstantial—that United ever actually *learned* how to manufacture a Gatorfoam facer. There is no evidence in the record that United ever successfully produced Gatorfoam facers or similar products, or that any of United's products or processes were derived from Gatorfoam or from the Gatorfoam manufacturing process. *Cf. Pioneer Hi-Bred Intern. v. Holden Foundation Seeds, Inc.*, 35 F.3d 1226, 1240 (8th Cir. 1994) ("Unlike the situation where a competitor is found to have possession of a process, product or fact which is similar to plaintiff's 'secret,' this case involves possession of a product *derived from* the protected secret[,]" which "removes the possibility of independent development" and supports an inference from circumstantial evidence of misappropriation. (emphasis in original)). 3A points to a United-produced document that contains speculations on how to manufacture Gatorfoam, *see* Doc. 45-53, p. 5, but all of the information contained in that document appears either to have been drawn from non-3A sources, *compare, e.g.*,

---

[2] The Court has avoided going into any further detail on this point out of respect for the asserted confidentiality of this information. For the record, the Court is referring to the information contained under seal at Doc. 46-1, pp. 8–10.

6

*id. with* Doc. 35-6, pp. 12–26 (industry publication describing various techniques for pressing resin-impregnated facers), or else to be so general or variable in description as to far exceed the narrow parameters required to duplicate 3A's actual process for manufacturing Gatorfoam facers, *see* Doc. 35-4, p. 40 (3A's expert testifying that the document is "throwing out a wide thing that this could cover other treating, other pressing, other types of things, so I don't see anything in here that absolutely goes—that's dead on exactly what 3A does," and agreeing that the document does not "give them specifics as to somebody to, [']Here, run a press like this[']").

Ultimately, the uncontradicted evidentiary record simply shows that United tried for a while to develop a competitor product to Gatorfoam; that it compiled what information it could on the manufacturing process from its own industry knowledge and publicly available sources, and shared this information with third-party consultants; and that after repeatedly failing to produce Gatorfoam-quality facers, it abandoned the project. *See* Doc. 35-5, pp. 3–9; Doc. 35-10, p. 4; Doc. 45-4, p. 12. Not only would it be pure speculation to conclude from this that Mr. Paulin told United how to produce Gatorfoam; such a conclusion would actually *contradict* the evidence, since one would only expect United to have *succeeded* in its attempt at copying Gatorfoam if it had known how to do so.[3] Accordingly, United and Mr. Paulin are entitled to summary judgment on 3A's Gatorfoam claims.

---

[3] To be clear, the Court is not saying that evidence of use is strictly necessary to support a claim for misappropriation of trade secrets; wrongful acquisition or disclosure can also constitute misappropriation, even if the confidential information is never actually implemented. *See* Ark. Code Ann. § 4-75-601(2). But the point here is simply that there is no evidence in the record that United ever acquired, or that Mr. Paulin ever disclosed, this information at all.

7

Finally, the Court notes that at the end of their Motion, the Defendants "seek leave to file additional motions and briefs specifying additional costs and fees to be recouped in the event the Court grants some or all of this motion." (Doc. 35-26, p. 15). The Defendants imply that this additional relief would be sought under Rule 11. *See id.* at 14. The Court does not believe leave of the Court is necessary for any party to file a motion for Rule 11 sanctions. The Court is not inclined at this time to issue any order to show cause why Rule 11 sanctions should not be imposed. *See* Fed. R. Civ. P. 11(c)(3). And since "[a] motion for sanctions must be made separately from any other motion," Rule 11(c)(2), the Court will not speculate here on how it would rule on any such motion.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants United Industries, Inc.'s and Wesley Paulin's Motion for Partial Summary Judgment (Doc. 34) is **GRANTED** as follows: 3A's claims are **DISMISSED WITH PREJUDICE** to the extent they concern 3A's Gatorfoam, foamed high impact polystyrene, or tile backer board products.

**IT IS SO ORDERED** on this 15th day of March, 2017.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE